[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15701

_____

Agency No. 42130

SUNBELT CHLOR ALKALI PARTNERSHIP,

Petitioner,

versus

SURFACE TRANSPORTATION BOARD,
UNITED STATES OF AMERICA,

Respondents,

NORFOLK SOUTHERN RAILWAY COMPANY,

Intervenor.

_____

Petition for Review of a Decision of the
Surface Transportation Board

_____

(January 26, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Sunbelt Chlor Alkali Partnership petitions for review of the Surface Transportation Board's decision that the rate Norfolk Southern Railway Company charges Sunbelt is reasonable. After careful review and with the benefit of oral argument, we deny the petition for review.

## I.    BACKGROUND

Sunbelt manufactures chlorine in its plant in McIntosh, Alabama and ships its product by rail from the plant to LaPorte, Texas. For the first leg of the route, from McIntosh to New Orleans, Louisiana, Norfolk Southern is the only available rail service provider. In July 2011, Sunbelt filed a complaint before the Board challenging as unreasonable the rate for this leg of the route. To support its claim, Sunbelt used the Board's stand-alone cost ("SAC") test, which requires the complaining shipper to create a hypothetical, stand-alone railroad ("SARR"). Under the SAC test, if the existing railroad's challenged rate exceeds the amount the SARR would need to charge to serve the shipper, cover the SARR's costs, and earn a reasonable return on investment, the rate is unreasonable.

As required by the SAC test, in its opening evidence Sunbelt proposed a SARR along with a detailed operating plan, which it contended showed that Norfolk Southern's rate was unreasonable. Relevant here, Sunbelt's plan proposed

2

a hub at Birmingham, which lies between McIntosh and New Orleans.  At the Birmingham hub, Sunbelt chose not to include a hump yard, which would be more expensive to construct but more efficient at managing high rail car traffic.   Sunbelt also proposed that the SARR would amortize its debt by making quarterly interest-only payments ("coupon method").

In response, Norfolk Southern submitted its own operating plan for the SARR, which it contended showed that the rate it charged Sunbelt was reasonable.  Notably, that plan included a hump yard at Birmingham to manage traffic.  Norfolk Southern also proposed the standard debt amortization method under Board precedent, which would require the SARR to pay down its debt gradually over time, similar to payments on a mortgage.  By including the Birmingham hump yard and having the SARR pay both interest and principal on its debt, Norfolk Southern's proposal was considerably more expensive than Sunbelt's.  On rebuttal, Sunbelt continued to maintain that a hump yard at Birmingham was unnecessary and that it had properly accounted for the SARR's expenses regarding its debt.

Evaluating the parties' competing proposals, the Board determined, and Sunbelt does not challenge here, that the SARR needed a hump yard at Birmingham to serve the traffic.  The Board explained that this "major design flaw" rendered Sunbelt's plan infeasible:  therefore, the Board accepted Norfolk

3

Southern's operating plan.  Decision at 13 (JA 1036).[1]  Additionally, the Board rejected Sunbelt's method of debt amortization as inconsistent with the SAC test, adopting Norfolk Southern's proposal instead.  After conducting the SAC analysis using Norfolk Southern's operating plan and debt amortization method, the Board concluded that Sunbelt had failed to demonstrate that the rate Norfolk Southern charged was unreasonable.

Sunbelt petitioned the Board for reconsideration.  Sunbelt argued that once the Board determined a hump yard was necessary, the Board should have incorporated a hump yard into Sunbelt's operating plan, rather than accepting Norfolk Southern's plan.  Sunbelt also argued that the Board erred in rejecting Sunbelt's use of the coupon method to amortize its debt.  The Board rejected Sunbelt's arguments.

Sunbelt now petitions this Court for review of the Board's order.

## II.    STANDARD OF REVIEW

The Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  To make this determination, courts must "consider whether the decision was based on a consideration of the relevant factors and whether there

---

[1] Citations to material in the administrative record are to the joint appendix filed in this Court.

has been a clear error of judgment." *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (internal quotation marks omitted).

### III.    DISCUSSION

The Board regulates the rates charged by interstate railroads. *See BNSF Ry. Co. v. Surface Transp. Bd.*, 526 F.3d 770, 773 (D.C. Cir. 2008). When a single railroad exercises "market dominance," meaning there is an "absence of effective competition from other rail carriers or modes of transportation" in the relevant market, a party may bring a complaint before the Board challenging the railroad's rate. 49 U.S.C. §§ 10701(d)(1), 10707(a)-(b). The Board then determines whether the rate charged by the railroad is reasonable.

Here, the parties agree that Norfolk Southern exercised market dominance for the route from McIntosh to New Orleans, meaning the Board had the authority to review Sunbelt's challenge to the rate for this route. The parties disagree over the Board's determination that Norfolk Southern's rate was reasonable.

Sunbelt argues that the Board's decision was arbitrary and capricious for two reasons. First, it argues that the Board should have inserted Norfolk Southern's hump yard into Sunbelt's proposed plan, creating a hybrid plan, rather than accepting Norfolk Southern's plan. Second, it argues that the Board erred in accepting Norfolk Southern's method for debt amortization over Sunbelt's. We address these arguments in turn.

5

## A.    The Hump Yard

Sunbelt argues that once the Board determined that a hump yard was necessary at Birmingham, it should have substituted a hump yard for the flat yard in Sunbelt's operating plan, instead of accepting Norfolk Southern's plan.  We disagree.

After Norfolk Southern proposed the hump yard in its operating plan, Sunbelt could have modified its own plan to include a hump yard.  Instead, in its rebuttal brief, Sunbelt continued to oppose the addition of a hump yard.  It was only in its petition for reconsideration, after the Board's decision in Norfolk Southern's favor, that Sunbelt for the first time argued that the Board should create a hybrid plan.  But as the Board explained in its decision denying reconsideration, the Birmingham hump yard was the "keystone to the entire system's functionality," so the Board could not "simply try to stitch [Norfolk Southern's] hump yard onto Sunbelt's operating plan . . . without requiring additional changes to evidence that the Board was not in a position to make."  Recons. Decision at 4-5 (JA 1340-41).  Indeed, doing so would have required the Board to assess independently the hump yard's impact on the complex Rail Traffic Controller ("RTC") model,[2] as well as the added costs to the operating plan.

---

[2] The RTC is a computer program that tests the feasibility of the infrastructure in the operating plan.  As the Board has explained, the RTC "provides essential evidence to support a

We agree with the Board that, after making the tactical choice to oppose the addition of a hump yard until its petition for reconsideration, "Sunbelt may not now claim error" based on the Board's failure to incorporate a hump yard into Sunbelt's SARR. *Id.* at 6 (JA 1342). Although we agree with Sunbelt that the Board is more than a passive arbiter, it is not required "to identify alternatives that parties did not identify, particularly when . . . the effect of those changes is unclear." *Id.* at 6-7 (JA 1342-43). Therefore, we cannot say that the Board's decision to reject Sunbelt's proposal on reconsideration to incorporate a hump yard into Sunbelt's operating plan was arbitrary or capricious.

## B.    Debt Amortization

Sunbelt also argues that the Board erred in adopting Norfolk Southern's proposal for debt amortization. Again, we disagree. The parties proposed different plans for paying off the SARR's debt. Sunbelt proposed the coupon method, under which the SARR would make interest-only payments and then take on new debt as the principal became due. Norfolk Southern, by contrast, proposed that the SARR would pay off the principal gradually over time, along with decreasing interest payments. The Board selected Norfolk Southern's proposal, determining that Sunbelt's coupon method would allow the SARR to avoid paying for its assets in

---

SARR's configuration and certain broader operating statistics." Recons. Decision at 5 (JA 1341).

violation of the SAC test, which assesses "whether the SARR can pay the cost of constructing, maintaining and operating its system."  Decision at 191 (JA 1214).  According to the Board, Norfolk Southern's proposal was consistent "with long-standing policy."  Recons. Decision at 10 (JA 1346).

Sunbelt argues that it was arbitrary and capricious for the Board to reject its plan for interest-only debt amortization in favor of Norfolk Southern's mortgage-style proposal because requiring the SARR to pay its principal constitutes a barrier to entry—which "must be omitted from the SAC analysis"—because existing railroads use the coupon method.  Decision at 5 (JA 1028).  As the Board noted, however, allowing the SARR to pay only interest would "abandon the fundamental structure of the SAC test."  *Id.* at 191 (JA 1214).  Furthermore, under "Board precedent . . . the SARR's debt payments contain an interest component and a principal component, and the interest portion decreases as the debt is amortized over time."  *Id.*  Sunbelt points to no case where the Board applied a different debt amortization method than the one Norfolk Southern proposed.  We therefore cannot conclude that the Board's decision to apply that method here was arbitrary and capricious.

## IV.   CONCLUSION

For the reasons set forth above, we deny Sunbelt's petition for review.

**DENIED**.